Good morning, Your Honors. May it please the Court. My name is Corbett Anderson, and I'm here representing the EEOC. Your Honors, this is an intensely factual case where the credibility of the witnesses lies at the core. The Rosaleses were two older workers with long and successful work histories with Banner Health who were terminated for taking time off that they say that their supervisor, Danny Armstrong, had approved in multiple conversations between them. Armstrong denies this and says he terminated them for being absent without leave, being no calls and no shows, but he and the Rosaleses are really the only people who know for sure what was said. Orbiting this core credibility question are several pieces of evidence which, viewed in the EEOC's favor, which at summary judgment should be done, would permit a rational fact finder to find that the Rosaleses were discriminated against based on their ages. First, less than a month after the Rosaleses were terminated, Danny Armstrong hired several significantly younger people to work in the same jobs that the Rosaleses had. The district courts erroneously held that these people could not be deemed replacements for the Rosaleses, but that was not viewing the evidence in the favor of the EEOC as the court should have done, and it's not consistent with this court's precedent, particularly Diaz v. Eagle Produce. The EEOC established a prime aphasia case, and the question in the McDonnell-Douglas framework then is what is the reason for the decision? Again, Armstrong says that the Rosaleses were no calls, no shows. However, there's several, again, pieces of evidence which, viewed in the EEOC's favor, would permit a rational fact finder to find that that is a pretext for age discrimination. First, Armstrong says that he denied the Rosaleses' leave directly on their paid time off forms. The EEOC made repeated discovery requests for those paid time off forms that he says should be in Banner's files. They have not been produced. That's evidence of pretext. Well, excuse me if I'm wrong, but it seems to me the first thing the district court did is say that you'd failed to establish a prime aphasia case, and that's what the district court suggested. The district court did hold that, Your Honors, but again ñ And it seems to me that's what you're appealing first, correct? We're appealing the entire decision. Well, I understand, but he said that you didn't put a prime aphasia case on. If he said that you didn't put a prime aphasia case on, I guess I'm trying to figure out what is your prime aphasia case that you suggest. Sure. The bottom line is that you've got to go there first, and then we talk about pretext. And I appreciate that the cases suggest that it's minimal what you have to put on, but I guess that's my ñ the court didn't think you got it there. Thank you, Your Honor. The court held that the EEOC had not established a prime aphasia case, but again, that was based on his view of the replacement evidence, and the replacement evidence is that Danny Armstrong ñ So is the whole issue on prime aphasia case go totally on replacement evidence? No, it doesn't, Your Honor. EEOC also introduced evidence, submitted evidence, that a similarly situated coworker of the Rosales' engaged in conduct of comparable seriousness and was not terminated by Danny Armstrong. In fact, Danny Armstrong gave her basically a gentle talking to when at the same time he was purporting to terminate the Rosales' for taking time off. And in the EEOC's view, a reasonable fact finder could look at the two situations. A significantly younger coworker, age 34, who could have been terminated under the company's policy but wasn't, was given minimal, very minimal discipline. Well, they argue that it was because she was absent due to illness. That is the assertion, Your Honor, but there is nothing in the record that supports the notion that Ms. Seaware was in fact ill. And according to Banner's own policy, she had incurred enough absences and enough policy violations to be terminated. That's sufficient for a rational fact finder to conclude that she was similarly situated. The district court also said that Ms. Seaware had advised the company of her illnesses and her absences in advance, but there's nothing in the record at all to support that. And Ms. Seaware's ---- So if we get you past the prima facie case, there's quite a bit of case law that suggests that the mere existence of a prima facie case doesn't preclude summary judgment. But you've got to come forth now. The defendant came forth and said the reason we fired them, they violated what they had to do under our regulations and we fired them. Now, I don't find anything more than what you said in your prima facie case to suggest that that was a pretext. Well, there's several. What extra besides you, what you've already suggested in your prima facie case, what extra do you have to tell me this was a pretext? Quite a bit, Your Honors. We have the testimony of the Rosaleses, which says that Danny Armstrong personally told them that they could take the leave and verify that they didn't ---- That was a prima facie evidence. No, Your Honor, that's prima facie and pretext evidence, particularly pretext evidence. That creates the core credibility question at the heart of this case. Why is that material, given that the Rosaleses knew, admitted, acknowledged that the company's policy was to have permission, PTOs, to be in writing? They knew that they didn't get it in writing and they knew that their names were on schedule to work during the Christmas, New Year's time period. Why is it material? It's material, Your Honors, because Danny Armstrong did not follow the policy. Whatever the official policy may have been, and it's not clear what that official policy was with respect to these PTO forms, Danny Armstrong did not follow the policy. Just a month prior, Danny Armstrong told the Rosaleses that they could have Thanksgiving off without requiring a PTO form at all. The Armstrongs also talked to Mr. Armstrong, the Rosaleses talked to Mr. Armstrong on several occasions and confirmed that they could take the leave. So that is material. If, in fact, he did give them the approval to take the leave, then his subsequent revocation and backtracking and, in a sense, lying about whether he said that is very material, because it shows that he is, I mean, that's mendacity on his part. A reasonable fact finder could conclude from his, the falsity and the mendacity. The reason Mr. Armstrong was eight was because they were old? Yes, Your Honor. He ordered the workforce. He was old. Rosales himself was like 58 or something when he was rehired the second time after having done the same thing before. I mean, what is there to show in any sense that age was the reason that they were let go? Well, the Rosaleses were older. Mr. Armstrong was in his 40s. Ms. Seaward was treated far better. She was in her 30s. Armstrong hired several significantly younger people after firing her. And he, and the reasons that he stayed aren't supported by the record. But when you require a written policy, which they knew, when they were scheduled to work, which they knew, and the company invokes its policy, what is there to suggest that it was an intentionally done act because of their age, rather than to enforce their policy that everybody acknowledged existed? Well, the age evidence is the hiring of younger workers, significantly younger, the treatment of a significantly younger worker far better than her who was similarly situated, and the pretext evidence, which is that he says the forms disapproving their leave should be in the record, and it's not. He says that. I mean, so what? That's evidence of pretext. That's evidence that he is not, in fact, telling the truth. And when you combine all the evidence and look at it in the EEOC's favor. The truth is admitted by the Rosaleses. No, the Rosaleses. The company's policy required those notices to be in writing. But there's a. They were on the schedule, and they admit that neither happened. And they knew it. I mean, they made no attempt to clarify it. They just took their ticket and perfectly understandably, you know, got on the airplane and went to Denver to see their daughter at Christmas. But they did that knowing that they didn't have a slip. And they did it knowing that they were on the schedule to work during that time period. And they also did it knowing that Danny Armstrong told them that they didn't need the slip. And they did it also knowing that in the past, Danny Armstrong didn't follow the official policy. Whether the official policy is, in fact, the reason for their terminations is a material fact and issue in this case. Well, I guess my worry is that even if I assume that what you just said is true, I see a good claim for wrongful termination. I'm trying to figure out how I get it into age discrimination. I mean, what evidence do I have other than prima facie evidence, which is somebody hires somebody that's younger than them, that says this is an age discrimination case? It may be a great wrongful termination case. I don't know Arizona law well enough to know. In Idaho, it wouldn't, because you can fire them for any reason in Idaho. But the problem is, is I see you arguing good age, good wrongful termination factors to get to where you're getting to, but I'm still having a tough time seeing how it relates to age. Ms. Seaware was 34 years old. The Rosaleses were 61 years old. Danny Armstrong treated them far differently. They were similarly situated. That's enough for a rational person to conclude that age may be one of the reasons, the determinant reason that Ms. Seaware was treated so lightly and the Rosaleses were treated so harshly. That's evidence of age discrimination. It may not be the only permissible inference on this record, but it is a permissible inference that a rational fact finder could make. Well, my worry is I tried to get you a prima facie case in order to come to the age discrimination prima facie case. I came up with, if I don't agree with the district court, maybe we've hired somebody who's younger. It gets you in the door. Now I get to pretext, and I still don't have anything more than get me in the door evidence, and I'm seeing all this case law that says plaintiff must do more than establish a prima facie case and deny the credibility of the defendant's witnesses, which to me is all the EEOC has done here, at least in this question. So what do I use? I looked at Shuler, and I have a tough time understanding why Shuler is not controlling. Well, Your Honor, the Supreme Court in Reeves v. Sanderson-Plumbing held that if the EEOC or any plaintiff in a discrimination case establishes a prima facie case and raises a material fact as to whether the company's reason is a pretext for age discrimination, that that permits a rational fact finder to find that age discrimination occurred. We're asking for a simple and straightforward application of the Supreme Court's decision in Reeves and a case law in this circuit which say that the prima facie case is minimal and that in discrimination cases a fact finder is required to sort through the credibility questions in a case like this and to determine whether, in fact, age discrimination occurred. Okay. Can you take the rest of your time?  Thank you, Your Honor. May it please the Court. My name is Ben Cooper, and I represent Banner Health. Both appeals in this case raise a key question. Why did the EEOC bring this action to begin with and then pursue it so doggedly even on appeal? At the heart of the case is an emptiness. There's no evidence that anyone at Banner Health ever cared one whit about any employee's age. Even if you assume and eliminate the credibility questions and assume that the Rosaleses were truthful when they said that he, Mr. Armstrong, had approved their leave without giving them any form, it doesn't matter. As Judge Smith noted, maybe one could theorize a wrongful termination case. But this has nothing to do with age. Now, the Rosaleses themselves said, you know, we can't figure out why we were fired. As if not showing up to work because you're on vacation when you're posted on the schedule and you don't have a written form per company policy isn't enough. They said first they thought, well, maybe it's because we're Hispanic, but no, there are lots of Hispanic people. So it must be because we're old. Well, I'm not sure 61 is really old, but there are a lot of people older than they were who were being employed. And the EEOC couldn't do any better. So it's all a matter of smoke and mirrors to hide the fact that no one cared about anyone's age at Banner Health, particularly not on these cleaning crews. So they go with two kind of arguments. Well, first, who replaced them? Well, I'm not sure how you would even analyze the notion of replacement because it's not like this was a position that was being filled by someone else. There was a fluid, ongoing hiring process for the housekeeping and janitorial services. And so people were being hired every month leading up to that, August 2005, September, October, November, December, January. So it's kind of arbitrary to say, well, we're only going to look at the people who happened to be hired in January because these people were terminated in December and not look at the whole course of hiring. You have to look and see, well, was there evidence that Banner Health was trying to get younger in its cleaning crew? And the answer is no, because in October, a couple months before, they hired a woman for the same position who was the same age as these people. And as Judge Reimer noted before, they had fired Fernando Rosales for the same offense, for being gone three days, no call and no show, in 2000. And then rehired him at age 58, two years after that, three years before this happened. There was no evidence that they cared. No, anyone cared about age. These are cleaning crews in a hospital. They want reliable people to show up because if you're gone, if you don't show, patient's health is compromised. And that's what the evidence showed. So age had never had anything to do with anything in this case. And I think the demographics of the workforce established that. So they come up with a comparator. Lydia, I think her name is pronounced Sa-weer, but I could be wrong. Mr. EEOC's counsel says, well, there's no evidence that she was cut some slack because she was sick. Well, there is evidence. Armstrong testified as to what the circumstances were. EEOC never attempted to depose Lydia, Ms. Sa-weer, and find out what the facts were. They never had contested his account at all. And if you look at the facts of her situation, it wasn't even remotely comparable. She had seven occurrences, 7.0 in their accounting, spread out over six months. She called in advance. No one disputed it was medical-related. She later took FMLA leave. She got a talking to. Some of the events were not no-shows. It was clocking out two hours before shift or being slightly tardy. And they all added up and they dealt with it. But it was not dealt with under the same provision as the three-day no-call, no-show policy. It was a different disciplinary policy. So she's hardly comparable. And the district court found that there was no evidence establishing that she was in a comparable situation or that her misconduct was even comparable. I mean, it's striking that, Fernando, this was the second time around. One would expect that someone in his position who has been fired for this before would have gotten the paperwork. But even if you allowed them to get beyond the Professor Fisher case, you get the pretext. Well, what about if your immediate supervisor comes to you and tells you, don't worry about it, don't worry about it from the standpoint of thanksgiving, and don't worry about the fact that you don't have all the little written things with regard to the Christmas holidays? So they took the Christmas holidays off. I think it's pretty hard to say that isn't reasonable, or at least a jury question, as to whether or not what Armstrong had said that represented it to them was reasonable was a fact. And also, with regard to these two employees, they'd been exemplary employees. He had gotten recognition for being so much on time and getting his positive review for that. And then all of a sudden, they take a week off that supposedly was not authorized. It's hard for me to believe that. Well, Your Honor, that may be grounds for suing for wrongful termination under some other provision of, you know, Arizona law. But it doesn't say anything about their age. This is ultimately a case for age discrimination. Now, under, you know, Roger versus Clark, you know, the fact that he got a great review for timeliness right before he got terminated after, you know, right before he left for his vacation establishes that there was no pretext. Now, the EOC comes along and says, well, how clever was Mr. Armstrong? He must have been lying in wait by giving this great review, waiting until they took off, and then terminating them, and that shows age. It doesn't show anything about age. I'm not sure what it shows about anything except that Armstrong may not have been a model supervisor. But it doesn't establish anything that gives an inference of age discrimination any more than it suggests, you know, national origin discrimination, discrimination against people whose names begin with F. It doesn't say anything. It's not the kind of case that belongs in a Federal court. When you're establishing pretext, is the pretext that you have to show that it was, as a result, that there was a pretext with regard to age discrimination, or do you have to show that it's a pretext of the explanation that's being given by the, by Banner? Well, it has to be, the pretext has to suggest that this is a cover story for what really happened. Because if pretext means, you know, you fired me because I allegedly did something wrong, I didn't perform my job satisfactorily, such as not showing up, and you respond, well, I dispute that. I think I did perform my job. There has to be more than simply saying you fired me unjustly. There has to be something that suggests that the story, that there's not only just a dispute over what, over the grounds for the termination, but that this is really a cover story. That is, you may say that Armstrong was out of line in terminating them because, you know, maybe he forgot that he had given oral permission. And Fernando testifies, you know, that he can't say that maybe Armstrong didn't just forget. Okay. So the fact that he's, you know, you have to show more. You have to show that someone's hiding something. I don't give much credit for that statement that he might have been just forgetful and so forth. He was trying to get his job back at that time, and he was trying to be conciliatory. But I think it's hard for me to believe that it's not a jury question as to whether what Armstrong did was not to represent to them that it was all right for him to go. It was just so much out of character for them to do that without his permission. Well, it wasn't out of character. Remember, this gentleman, Mr. Rosales, had been fired for violating this policy once before and then rehired despite his age. Now, the interesting thing, pretext must be. But on the other hand, they had just given him this particular award for being so timely and such a good employee. Which cuts against a claim of pretext. I mean, all the cases say that that kind of a review right before the precipitating act shows that there was no animus going on. But the question is not whether Armstrong. It doesn't have to be animus. It's just whether you believe what Armstrong was saying, that he hadn't given them this permission. That's not what you have to disbelieve, Your Honor, if I'm to dispute. You have to disbelieve whether or not he thought he was firing them for violating the policy. That is, Armstrong says, we're firing you because you didn't show up for more than three days. His managers looked at the information and confirmed that decision. The question is, were they hiding something, not whether it was wrong to fire them for that reason, but whether or not that was a pretext, that it was a cover story for firing them because they were old or allegedly old, you know, above the age of 40. And there's no evidence of that next step, that they thought that they really had some other reason behind them. Because what's clear in the record is anyone else who did the same thing, violated the three-day no-call, no-show policy, met the same fate. There's no dispute about that, that you did that, you got fired. Lydia Sawir never did that. But anyone who did, did that. And, you know, there's no extrinsic evidence of approval by anyone else. You know, no one else got paid time off. Let me ask you a question, counsel, because my colleagues' questions really go to mine, which is, in my book, the precipice question. I understand, based on Shuler, that one must do more than establish a prima facie case, and one must do more than just say, you're false and we're true. In that situation, it's not enough to get to the pretext. But what is my standard of review for the pretext, especially given the recent cases from this Court? I mean, I'm trying to weigh whether the situation with the lady employee and whether the situation with the hiring of those particular people in January, even though that's what they use as the prima facie case, if you will, is enough to at least make a question of fact as the pretext, given the standard of review. The standard of review ultimately is, could the jury reasonably find from this evidence that there was discrimination on the basis of age? That's always, you know, that's the gross case of the Court. That's always the ultimate question. And we have this analytic construct, you know, to try to get us there to summary judgment, past summary judgment. But there's not evidence of that, because here, the essence of pretext — Well, wait a minute. You told me when I asked you about what has to be shown on pretext, it's not that it was a pretext with regard to age, but it was a pretext with regard to why he was fired. You have to show that they weren't sincere in firing them for the basis that was stated. Not that they weren't. Not that they just — they may have been wrong in doing it or it may have been unfair, but that's not why they were really doing it. And there's not a shred of evidence that they were not firing these people because they took off. Hold on a second. Yes. I'm now getting myself confused. The ultimate question in any age discrimination case is always was there discrimination on the basis of age? Absolutely. Right. So that's the question we have to answer. We get there by applying the McDonnell-Douglas burden-shifting framework. That's correct. And so you say was the reason legitimate? And I don't even hear anybody suggesting that the reason isn't legitimate. That is, he was gone for three days and didn't call. So the question then is, is there — was that a pretextual reason? Right. That would allow somebody to conclude that there was discrimination on the basis of age. It's not just a question of whether you believe or disbelieve Armstrong. Right? I agree. But the test ultimately, a pretext, is to say is there evidence suggesting that this could not have been the reason why they did what they did? Well, it's not just that. The real reason was age discrimination. I agree. All right. Well, I mean, that makes a huge difference. No, but the ultimate — right. I think either way you get to the same result, which is that there is no evidence that Banner Health was not sincerely terminating these people for the reason it gave. Well, yes, but it could have been terminating them because it didn't like purple hair. I agree. No problem. So it's not just that they didn't terminate them for the reason they said. It's that the real reason for termination was age discrimination. I agree. Not purple hair. I agree that no matter how the — because ultimately my first point is my last point, which is that ultimately there's no evidence that anyone cared about anyone's age here. But even if you work the steps that the EEO tries to get past to get you to some ability to say, well, you know, it wouldn't have been fair to terminate someone for taking off for a week because they might have gotten oral permission, that's not enough. That's a different lawsuit that the EEOC can't and didn't bring. The question is, is there a reason to think that Banner Health had some kind of hidden agenda and that that agenda had to do with age? And there's simply no evidence. That, of course, is not the answer you gave me earlier about pretext-wise. I may not have been clear. That's the answer I was trying to give you, Your Honor. I don't — I have not tried to change my tune. Well, you have. I apologize for that then, and I wasn't clear enough earlier on. Thank you, Your Honor. We're clear enough now. Okay. Thank you. Mr. Cooper, Mr. Anderson. Before you leave, I do have one question. Certainly. We went through the briefs, a whole bunch about settlement discussions. Why is that proper? Why would she be considering that at all? It was presented, Your Honor, in the context of our appeal from the denial of attorneys' fees, which I haven't focused on here. We were contending that the EEOC's entire litigation is in bad faith. But I haven't focused on it. It's not relevant to — Even then, is it proper to be bringing in negotiations for settlement? It is, Your Honor, because it's in the context of a formal conciliation process. And one of the issues that courts look at is whether the EEOC conducted the conciliation process in good faith. But I agree with you. It's not relevant to the summary judgment motion. No, and that's — I was objecting to it when I was reading all this in connection with this case. I understand, Your Honor. Thank you. Okay. Mr. Anderson. Just a minute, Your Honors. Mr. Cooper is arguing for a pretext-plus standard. He keeps saying that there's, quote, no evidence. But the evidence is the prima facie evidence combined with the pretext evidence, not just an assertion that Mr. Armstrong wasn't telling the truth, but, in fact, evidence that he was not telling the truth. That, under Reeves, is sufficient to put this case to a jury. It was a jury question. Can the judge look at all the evidence in the record, not just the evidence you present, and determine whether any of the evidence you present is worthwhile to meet a genuine issue of fact? Worthwhile to meet. Can the district judge look at the evidence in the record? I mean, my worry is that the evidence you focus on in this record is of one month and one situation, which I frankly believe the one situation I'm not sure you can really argue because I think it's totally different. But if you take January alone, you might argue a lot of stuff. But if I look at all the stuff in the record, January alone doesn't make your point. So are you telling me that on summary judgment I can't look at everything that's in this record and see if the argument you've made is enough to reach the jury? I'm saying that jury questions should be left for the jury. That's not the question. Well, it's not. The court should not weigh the evidence. The court should accept the evidence of the EEOC is true. So you're telling me as a D.J. or as me on de novo review that I can't look at all the evidence in the record and see if you're not just taking one little whit out of it to make a point that really doesn't really indicate the evidence? Under Reeves, the only pop, and it's a rare case, but the only situation in which that would be appropriate is if the EEOC established what the Supreme Court said is a weak inference of pretext, and there's abundant and uncontroverted evidence that nondiscrimination occurred. Here, it is not a weak case of pretext. We have Ms. Seaweer. We have Mr. Armstrong's testimony. Ms. Seaweer aside, what evidence of discrimination on the basis of age do you have? We have Mr. Armstrong's hiring immediately after firing the Rosaleses. Now, Mr. Cooper points to, and I think you mentioned, you know, the general workforce. But under this Court's decision in Diaz, the most relevant workforce statistics are the workforce statistics that relates to Armstrong's hiring. Yeah, but nobody was hired to replace these people. So you have to look at their, at what happened, and including with your client. Anyway, that's not my question. My question is precisely what evidence of discrimination on the basis of age do you have apart from Ms. Seaweer? We have the replacement evidence, Your Honor. Respectfully, I disagree that we do have evidence of replacement here. That's fine. Okay. And we have the ---- What else? Mr. Armstrong's testimony that he personally denied the Rosaleses' leave on their forms and that those ---- Well, that doesn't show anything. It just shows he denied them. Well, this Court ---- It doesn't show age. Well, the Court has held that if the non-discriminatory reason is not supported by the documentary record, and here Armstrong says it should be, then that can raise an inference of pretext. And again ---- Pretext, yes. He could have done it because he's just a terrible supervisor. But what I'm asking is evidence that shows age as a motivating factor, a resource. Under Reeves, Your Honor, pretext plus mendacity. We're running way out of time. Just evidence. Hardcore, you know, I can look at it and see it with my eyes. The ages of the replacements. Okay. The age of Seaweer. The ages of the Rosaleses. The lack of documentary evidence supporting Armstrong's testimony. Okay. And we have, as Judge Hugg said, the complete implausibility that two long-term workers with superior work histories would just take leave willy-nilly after confirming, in multiple conversations about which there's a question of fact, that they, in fact, had the leave that they were taking. Okay. Anything else that shows age? Well, again, the differences between the ages of the hires and the fires. Who said that? Replacement age. You said that already. The age of the replacement. Well, again, I mean, whether age occurred is the ultimate fact question in this case, as you mentioned. That's what I'm trying to find out from you, whether there is any. There is no direct evidence of age except for a lead housekeeper making some age-related comments to Mr. Rosales. But you've now given your universe of evidence on circumstantial showing of age, right? And under Reeves, that's sufficient, yes. Okay. I got your legal argument. Okay. Thank you, Your Honor. Counsel, both of you, thank you for your argument. The matter just argued but will be submitted and the court will stand adjourned. All rise.
judges: Hug, Rymer, Smith N. R.